# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 25-0343V

|  |  |
|---|---|
| KIMBERLY NORRIS,<br><br>                    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Chief Special Master Corcoran<br><br>Filed: May 14, 2026 |

*Koby Jack Kirkland, Law Office of Koby Kirkland, LLC, Mobile, AL, for Petitioner.*

*Parisa Tabassian, U.S. Department of Justice, Washington, DC, for Respondent.*

**FINDINGS OF FACT**[1]

On February 26, 2025, Kimberly Norris filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that that she suffered a shoulder injury related to vaccine administration ("SIRVA") caused by an influenza ("flu") vaccine received on October 3, 2023. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

The parties were unable to settle the claim (ECF No. 20). Respondent notes that the vaccination record does not document in which arm the vaccine was administered,

---

[1] Because this Fact Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

and contends that Petitioner has not established that (1) the onset of her pain occurred within the time required for a Table SIRVA, and (2) she suffered from reduced range of motion ("ROM") at any time. Respondent's Rule 4(c) Report at *4 (ECF No. 22). For the reasons set forth below, I find that Petitioner's shoulder pain likely began within 48 hours of vaccination, and that the vaccine was likely administered in her left shoulder. Other disputed matters cannot at this time be resolved, however.

## I.    Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence.  The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs*., 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs*., No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Human Servs*., No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs*., 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## II.     Finding of Fact

I make these findings after a complete review of the record, including all medical records, testimonial evidence, Respondent's Rule 4(c) report, and additional evidence filed. Specifically, I highlight the following evidence:

- Petitioner submitted pharmacy records demonstrating that on October 3, 2023, she signed a consent form requesting a flu vaccine, and a vaccine was dispensed. Ex. 2 at 11. These records do not, however, document the situs of administration.

- Petitioner filed a statement, signed under penalty of perjury by Petitioner and her counsel, declaring that they were unable to obtain a vaccination record identifying the arm in which the vaccine was administered. Petitioner's Affidavit of Unavailability of Medical Records, filed June 20, 2025 (ECF No. 10). The statement recounts the steps taken to obtain this record, and explains that a representative of the pharmacy's litigation support department stated that the situs of vaccination "was not documented at the time of the vaccination" and therefore the pharmacy was "unable to provide the site of this vaccination." *Id*. at *5. Petitioner's statement includes pictures Petitioner states she took of her left shoulder following vaccination. *Id*. at *6.

- Petitioner has filed printed emails exchanged between Petitioner's counsel and Publix Litigation Support staff where Publix (whose pharmacy administered the vaccine) confirms that the situs of vaccination was not documented at the time of administration. Ex. 10 at 11.

- Less than a month after vaccination (October 31, 2023), Petitioner saw an orthopedist for left shoulder pain. Ex. 4 at 18. She explained that she had "received a flu shot earlier this month and since then she has had some increased

3

pain" that was starting to keep her up at night. *Id*. On examination, her left shoulder ROM was within normal limits, with positive Neer's and Hawkins signs. She was assessed with left shoulder bursitis and given a steroid injection and prescription medication. *Id*.

- Four months later (February 28, 2024),[3] Petitioner followed up with the orthopedist. Ex. 4 at 8. The steroid injection had helped some, but she continued to experience pain that worsened when she reached overhead or away from her body and woke her at night. *Id*. On examination, she exhibited full active ROM in her left shoulder. *Id*. She was given another steroid injection and a physical therapy ("PT") referral. *Id*.

- Petitioner underwent a PT evaluation on March 13, 2024. Ex. 5 at 12. She explained that she had received a flu vaccine in early October the prior year, and shortly thereafter began to experience shoulder pain. *Id*. Steroid injections had given her a few days of relief. *Id*. She rated her pain two to three out of ten. *Id*. On examination, she was found to have full shoulder ROM, with pain in the end ranges. *Id*.

- Petitioner continued PT until April 23, 2024. Ex. 5 at 14-18. An April 23rd progress report stated that Petitioner was "doing significantly better" but still had mild intermittent left shoulder pain. *Id*. at 18. Her shoulder ROM was noted as "normal," and she was discharged from PT, with a recommendation that she continue exercises at home. *Id*.

- Petitioner submitted an affidavit stating that when she received the subject vaccine, she experienced "immediate sharp pain in [her] upper left shoulder." Ex. 7 at ¶ 4. Petitioner is a nurse, and explains that this pain was different, and much worse, than usual pain from intramuscular vaccinations. *Id*. She describes her pain as a severe and deep ache that worsened in the following days. *Id*. at ¶ 5. The pain radiated down her deltoid and upper arm, and she wondered if the needle had gone into the bursa of her shoulder rather than just the muscle. *Id*. She noticed bruising at the vaccination site high on her left shoulder. *Id*. at ¶ 6.

These medical records and testimonial evidence, reviewed in their totality, establish that Petitioner's shoulder pain more likely than not began within 48 hours of vaccination, and that the flu vaccine was likely administered in her left shoulder, as alleged. Petitioner sought care for her shoulder pain less than a month after vaccination,

---

[3] Petitioner explains that prior to vaccination, she was scheduled for an unrelated procedure that was performed in December 2023, and the procedure and recovery period delayed her return for shoulder treatment. Ex. 7 at ¶ 11.

and reported that her left shoulder pain had been present *since* vaccination. Ex. 4 at 18. When she sought PT, she related her left shoulder pain to vaccination, explaining that her pain began "shortly thereafter." Ex. 5 at 12. And Petitioner provided testimonial evidence that she experienced "immediate sharp pain" after vaccination. Ex. 7 at ¶ 4.

The record as it stands does not, however, appear to support a finding that Petitioner suffered from limited ROM - a requirement for a Table SIRVA. *Bolick v. Sec'y of Health & Human Servs*., No. 20-893V, 2023 WL 8187307, at *8 (Fed. Cl. Spec. Mstr. Oct. 19, 2023) (finding that the third SIRVA QAI "requires that a [p]etitioner demonstrate they suffered both pain and limited range of motion following receipt of a covered vaccine"). At both orthopedic appointments and in PT, Petitioner was found to exhibit full ROM. Ex. 4 at 8, 18; Ex. 5 at 12, 18.

Absent some evidence of a recorded instance in which Petitioner demonstrated limited ROM, she will not be able to fulfill all elements for a Table SIRVA, despite my findings above in her favor on other disputed elements. However, the Petition asserts both a Table SIRVA claim and a claim that the vaccine actually caused her shoulder injury. Petition at ¶¶ 33, 34. A viable causation-in-fact claim may exist even if the Table claim fails.

Given the above, Petitioner is encouraged to promptly re-engage Respondent in settlement discussions. Petitioner may also file, or identify, additional evidence concerning whether she experienced limited ROM. If settlement efforts are unsuccessful, further proceedings will be ordered as appropriate (including potential transfer of the matter out of SPU).

## Scheduling Order

- **Petitioner shall file, by no later than <u>Friday, June 26, 2026</u>, a status report providing an update on the parties' discussions, as well as any additional evidence Petitioner wishes to file.**

IT IS SO ORDERED.

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master

5